Case number 15-1264 et al. Mako Communications, LLC Petitioner v. Federal Communications Commission et al. Mr. Calkins for the petitioner, Mr. Lewis for the respondent.  Good morning. Good morning, Your Honor. My name is Scott Calkins. I represent Mako Communications, LLC, and I'll be arguing for the petitioners. I've reserved two minutes of rebuttal time. The primary issue before the court this morning is the meaning of Section 1452b-5 of the Spectrum Act of 2012. It is in the part of the Act, the subsection of the Act, that addresses the Commission's power and authority to reassign channels to TV stations as a part of the auction process. It's called, referred to by the Commission as the repacking process itself. B-5 specifically states that nothing in the subsection shall be construed to alter the spectrum usage rights of LPTV, low-power TV stations. And where are those spectrum usage rights established, and under what authority? Your Honor, they're pre-existing, obviously. They're being referred to here in B-5. Nothing can be done to alter them. So when were they established, and by what authority? Well, Your Honor, they were established originally back in 1982, but the LPTV stations have essentially the same rights to use spectrum as full-power class A stations. By what authority did the FCC establish them in 1982? What authority was it drawn by? Well, it was a general rulemaking authority, Your Honor, and it conducted a rulemaking, and that's where it was originally established. And at the time it was established, LPTV licensees were established to have secondary usage rights for interference purposes to certain users of the spectrum. And at that time, it was with respect to full-power and class A stations. In this particular case, the petitioners contend that the B-5 of the Act is there to protect the usage rights that LPTV stations has. The commission takes the position that B-5 provides no protection whatsoever to the LPTV stations in connection with the repacking. What protection exactly do you think is secured by B-5? Your Honor, what we're saying is the protection secured by B-5 is the right to have room, have a channel on which to operate. In other words, how does it compare to the protection that would have been accorded to LPTVs if they had been included within B-2? B-2, Your Honor, referring to the population and coverage area, sir, they are not covered. LPTV stations are not covered by that provision. We're not contending that they're covered by that provision. That relates to full-power and class A. The protection for LPTV licensees is found in B-5. I guess I'm just trying to understand comparatively. Would it have been possible to include LPTVs within B-2? Would it have been possible for the commission to do that? No, for Congress to have done that. It would have been. Congress didn't do it. The protection that Congress gave LPTV stations was in B-5. Right, and I'm just trying to understand what is the difference between had you been in B-2 as opposed to you're now in B-5? Well, had we been in B-2, then in addition to having a channel on which to operate, there would have been an additional protection for population and coverage area served for LPTV stations. But the entities that are protected by B-2 don't get the channel protection, right? They're subject to being repacked. All entities, both full-power, class A, and low-power television stations are subject to being repacked under B-1. The protection for full-power and class A is in B-2 regarding population served and coverage area. The protection for the LPTV licensees is in B-5, and it's not the same protection. It sounds like it's more. Under your argument, B-5 gives you more. No, Your Honor, we're not saying that B-5 provides more. I think B-5 would say that the commission could move LPTV licensees to another channel under B-1, reassign a channel under B-1 without the constraint imposed by B-2 for coverage area and population served. It's nobody's position that there's any new protection afforded by B-5. All it says is it will not alter any rights. That's correct. It won't decrease the existing rights. So you have to have the rights preexisting this statute before the right is conferred. That's right, and low-power television stations do have rights that preexist that statute. Their rights are secondary to whatever is primary, certainly secondary to the full-power station and the class A station. That's correct, but for interference purposes only. Well, now, they say for interference purposes only. I'm not quite certain where you get the authority for interference purposes only. What is your— Well, the description for LPTV stations in terms of the secondary status description is found in Part 74, Section 703 of the commission's regulations, and it describes what that secondary status for interference purposes means. Can you quote what it says about it? I don't have it in front of me, but I can essentially say that to the extent that an LPTV that is operating interference arises, then it's the LPTV station that has to yield to that until the interference issue can be resolved. Certainly, it is secondary to interference purposes. It's the only that I'm wondering about. Well, Your Honor, it's that point that the commission is using as justification for ignoring LPTV stations and the repacking process itself because the commission is saying because of that secondary status, we don't need to consider LPTV stations' rights in the repacking process itself. It's almost as if for the commission's sake, it's because of secondary status, the LPTV stations have no usage rights at all, and that's how they're being treated in the repacking, by being ignored. And it's our position that that renders B-5 superfluous because you wouldn't need B-5 if LPTV stations were always secondary and could be displaced and even put off the air in this case. It seems to me B-5 still does work if you construe it in the following way, that what B-5 means is that the rest of B doesn't give the commission any greater authority vis-a-vis LPTVs than they otherwise have under law. And so, for example, to use one example, interference, it would mean as a general matter, LPTVs are subject to being displaced because of interference considerations based on other sources of law, and this B doesn't give the commission any greater authority to do more than that. But, your honor, it's because of LPTV stations' secondary status and the fact that that status could be used as an excuse by the commission to essentially cause LPTV licensees to have no usage rights at all, that B-5 is in the act. It's not, the commission uses it as an excuse, but it helps explain the reason why LPTV needs the protection supported by B-5 in the act. In this case, it's the commission that essentially will be creating the interference. It seems an odd way, though, to express a limitation on the commission's power to say nothing in this act will be construed as altering. It doesn't say the commission can't do anything about the stations. It does not expressly speak to what the commission can do. Is this not an odd way for Congress to express it, if that's what it means? Well, your honor, I think that the statute put in context the fact that LPTV stations under B-1 can have their stations reassigned just like all the other users. And you say that nothing in that reassignment process that could result in the loss of LPTV licensees, that shouldn't be construed to alter the usage rights. This has to mean an ability to use it. There's nothing in the act that would give LPTV stations greater rights. So you would need a provision that somehow says, hey, commission, you can't give them greater rights. LPTV stations only can lose in this repacking process by the commission repacking it so tight there's just nowhere for the stations to go. And that's essentially what is happening, given the approach that the FCC has taken with respect to LPTV in the process. Your honor, I see my time is up. We'll give you that couple minutes in the middle, thank you. May it please the court, Jacob Lewis for the FCC. The basic issue in this case is whether B-5 required the commission to protect low power television stations in the incentive auction repacking. The FCC reasonably determined that because of the text, based on the text of the statute, and the nature of LPTV licenses, their secondary status. What does B-5 do then? What's its purpose? I think B-5, what it does, and the text I think makes this clear, is it provides that the existing rights of low power television stations, which were secondary the day before the Spectrum Act was passed, are the same the day after. Nothing in the Spectrum Act was intended. But if that section were not in there, would that not be the case? Can you give us a certain section in which this section doesn't? LPTV, low power television stations, do have a right to operate if they don't cause interference. So say, for example, the commission were to say, relying on B, because B-5 is only a protection against commission authority under subsection B, but let's say the commission relied on subsection B to say, you know what, a low power television station that is able to operate without interference to a primary user, nonetheless, may not operate. So what it does is it makes sure that the commission doesn't get extra authority by virtue of B as against low power television stations. Exactly correct. The statute is not construed to give it any greater authority. It's true, though, that you're relying on an interference protection, basically, because the idea is that, as a general matter, LPTVs can continue to function as long as they don't cause interference. And then if the commission tried to say, well, look, under B we have all this repacking authority, so we're going to repack away an LPTV station, notwithstanding that it doesn't cause interference, then B-5 could be used. Exactly right. But it still leaves open the notion that the extent to which that there's protection for LPTVs vis-à-vis interference is itself a creature of commission law, right? Yes. So, in other words... Well, this is the significance of the notwithstanding anything in B, because there's plenty of commission authority outside of B to operate. Indeed, that was the authority the commission relied on to create the low power television service in the first place. But for these purposes... So are you arguing that in the absence of B-5, the commission could have been far more punitive on the LPTV? Punitive is not the right word. But they could have put the LPTVs effectively out of business? Well, what I want to point the court to is the very limited language of B-5, because the limitation is not just that it doesn't alter, but that it's only a limitation on the commission's exercise of authority under B. And it only goes to the low power television. The question I'm asking is, if B-5 were not there, what would have been the commission's authority with respect to LPTVs? Well, perhaps the commission could have relied on other parts of B, which after all gives the commission broad authority, for example, in B-1, to engage in the repacking, to wipe, to take an extreme example, to wipe the LPTV service off. You know what, it's too much trouble to deal even with their secondary interference rights. We'd rather repack, or Congress has given us the ability to repack without even accounting for their ability to operate, even if they don't want to. Do you think there would have been authority under the commission's general rule making power to do that before B-5 came along? Yes. Well, the commission, it's undisputed for nearly the life of the commission that the commission has broad authority to allocate spectrum and to identify spectrum for particular uses. And again, that was how the LPTVs, low power television service, was created in the first place. The point here is this is an extremely narrow provision. It is not an additional protection. And I think Judge Srinivasan rightly pointed out it is in stark contrast to B-2. B-2 actually is a real protection. It preserves in the repacking the coverage area and population served. But that protection is limited as everyone agrees only to full power and class A stations and excludes low power television stations. And so, in essence, there is a right here. Low power television stations have a right. It's like the right you have flying standby. If you go up and you have a standby ticket and you're informed that there are no longer any seats on the plane, well, you can't fly on the plane. And to take another variant of their argument about the amount of spectrum available, if what you thought of 747 was going to pull up, but a 737 pulls up, and that's because there are no more seats, you again don't have any rights. You have standby rights, but they don't extend to controlling the size of the plane or whether there are… That is another issue here is what are the low power stations secondary to. It seems to be certainly a given that they're secondary to full power stations and class A stations. I think they contend that they shouldn't be deemed secondary to wireless services. Right, and I think that's absolutely, that argument is absolutely foreclosed by the Commission. The regulatory history here, which includes the digital TV transition, which in the digital TV transition, to go into the details, channels 52, the old channels 52 to 69, were cleared of broadcasters as a benefit, as a consequence of the switch from analog to digital broadcasting. And licensed wireless users were placed on… Is that the 2002 proceeding that you said in the brief? Yes, in fact, what we cite, our best case for this are ordered… It may be your only one. Well, we only need one, Your Honor, but I think there are some back of that. But the digital LP TV order in volume 19 of the FCC record does clearly lay out the process by which low power television stations were to cease operations when they were informed that they would be causing interference to wireless users, the wireless users who use this. In the 2002, you do have the reference to the new wireless services. I think in all the other quotations in your brief, and I didn't go through them all one by one, but your quotation marks seem to end, and the sentence goes on then to include them being secondary to the wireless service. Well, the easy explanation for that is that usually we are talking about interference in the broadcast spectrum. There weren't that many examples of where wireless users were using broadcast spectrum, the digital transition. You may not need more than one, but I don't think you have more than one. The one you've shown us is one in which the quotation marks reach out to encompass the wireless service. Even in those earlier orders, Your Honor, it was quite clear that a service called land mobile service was that low power television stations were secondary to those. Land mobile is a form of old radio telephone service, and the quotations we have talk about other primary users. It's true that in some of those orders, the other primary users... The only explanation is what the other primary users are. You're right, but I think the digital LPTV order, which we cite, makes clear that they included licensed wireless users as well, and I think there's no question about that. And so if there was any doubt before in the end, I think it was removed by that order. Can I ask one question about B-5 again, which is that in elaboration of a question that Judge Griffith asked, which is that you don't have to take the position that but for B-5, B-1 would have given you extra authority vis-a-vis LPTVs, because I thought what the commission was suggesting was that it's a rule of construction. It's just to assure that there's no extra authority as to LPTVs. It may have been an assurance of something that a court reviewing the statute would have already concluded was the case, but it's just to make it absolutely clear that B doesn't give you extra authority. I think you're absolutely right. That's a very good way of describing it. It was an assurance, an assurance that may not have been needed, but nonetheless or may not amount to much, but nonetheless was placed in the statute in its very limited form. Look, the bottom line is that if they really wanted the kind of protection they're seeking for here, which if not B-2 protection is very close to B-2 protection. They're asking for not to be displaced in the repacking. As I heard the counsel argue today, they want a seat, still maybe not the same size seat after all the repacking is done, but still a seat. That's a kind of affirmative protection that they didn't have before, because they didn't have protections against causing interference, and it is the kind of protection that you would have expected Congress to have drafted. If Congress wanted to say, look, low-power television stations, you are protected against displacement in the repacking, you would have expected something directly in subsection B to say that, and it would be an extremely odd way of incorporating that kind of protection in the language that they actually passed. And the final point, just if I could, the consequence of protecting low-power television stations in the incentive auction repacking would be quite substantial. Even if you take low-power television stations to mean the 1,917 stations currently that are originating programming, and the term can also include the TV translators that were at issue in their NAB decision, but even if you include those 1,900, that's compared to full-power and Class A stations, which right now according to the Commission's foregoing figures are over 2,000, 2,100. We're basically doubling the number of stations that you would have to protect. I think that the Commission is quite reasonable in saying that that would unduly constrain the auction, and it is an additional reason why Congress would be unreasonable or certainly reason for the Commission not to read B-5 to be a protection that would add that many stations in the repack. Thank you. Thank you very much. Your Honor, with respect to the questions that were asked regarding what if B-5 wasn't there, then what? Well, the way the Commission is treating B-5, it's as if it's not there entirely. If it was put there to give some kind of assurance that the Commission is not being given any extra authority under the Act, then that would imply there's something in the Act that could be construed to give the Commission extra or additional authority with respect to low-power television stations, and there is nothing else in the Act that could be construed that. LPTV stations can't participate in the reverse auction. Their stations are subject to reassignment under B-1, and they don't have the protections under B-2, as we've discussed. So there's nothing that could be implied to give additional rights or allow the Commission to give additional rights. And with respect to the Commission's general rulemaking authority, that can't trump the provisions of the Act itself. I mean, under 303-F, the Commission does have authority to make regulations that prevent interference, but that's subject to the provisions. Maybe I'm getting the terminology wrong, but I thought the one hypothetical that was raised by counsel for the Commission is that if the Commission decided to displace an LPTV station as part of repacking without regard to interference. Without regard to interference. Right, so even though there's an LPTV station that doesn't interfere, we need to get rid of this LPTV station to do the repacking that we'd like to do. Well, in order to do that, the Commission would have to look somewhere else to do that and have some other authority to do that. I guess that's the point. That's the point. That's what B-5 does, is it forces the Commission to look somewhere else. I'm sorry, Judge. Because as I understand, otherwise the Commission would have the argument available to it that says we get to do this because of B. Because B gives us repacking authority, and as part of this repacking authority, we don't need anything else. Even though you LPTV station don't cause any interference, we're still going to displace you because B gives us affirmative authority to go down this road. And then B-5 says, no, no, no, no, no. If you want to do that, you've got to look elsewhere in the law. Well, but the Commission doesn't have an ability under its rules itself to act to create interference that causes an LPTV station to lose its spectrum usage rights. There's nowhere in the Communications Act that would give the Commission the ability to do something like that. Well, other than B. And so the argument is that this B-5 makes sure that B doesn't give the Commission that authority. Because otherwise the Commission could come in and say, yeah, we don't have the authority anywhere else. But now we've got this gargantuan authority under B to do repacking. And what that authority does is allows us to displace LPTVs regardless of whether they cause interference. And then I think you would rightly stand up and say, no, you can't do that because B-5 says you can't do that. But for B-5, maybe the Commission would at least have that argument available to it. And B-5 tells everybody. I think without B-5, Your Honor, then there would be no protection whatsoever for LPTV in the repacking process. There's no reason to have B-5 in the statute unless it was to give some kind of protection to LPTV stations. Your Honor, if I could just conclude and say we ask that this matter be vacated and remanded for further rulemaking consistent with the rights for LPTV stations. Thank you. Thank you very much. The case is submitted.
judges: Griffith, Srinivasan, Sentelle